UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TONY DALE PENWELL, | |
| Petitioner, | Case No. C11-1452-RSL-BAT |
| v. | |
| SCOTT FRAKES, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

## INTRODUCTION AND SUMMARY CONCLUSION

Petitioner is a state prisoner who is currently confined at the Monroe Correctional Complex in Monroe, Washington. He seeks relief under 28 U.S.C. § 2254 from his 2006 King County Superior Court convictions on charges of first degree assault-domestic violence, second degree rape-domestic violence, unlawful imprisonment-domestic violence, felony harassment-domestic violence, and tampering with a witness-domestic violence. Respondent has filed an answer to the petition and has submitted relevant portions of the state court record. This Court, having carefully reviewed the petition, respondent's answer thereto, and the state court record, concludes that petitioner's federal habeas petition should be denied and this action should be dismissed with prejudice.

REPORT AND RECOMMENDATION - 1

# FACTUAL BACKGROUND

The Washington Court of Appeals summarized the facts relevant to petitioner's case as

follows:

> Ke'ida Pratcher met Penwell in 2003. She was a teenage high school
> student and he was a Metro bus driver in his early forties. By November 2004,
> Pratcher was pregnant and the couple was married and living in a South King
> County home. Penwell's six-year-old and four-year-old daughters from another
> marriage, S.P. and C.P., frequently stayed with them.

> On the evening of November 1, 2004, Pratcher called Penwell to ask for a
> ride home after spending the day with her sister. Penwell declined and Pratcher
> ended up spending the night at her friend Jamal Bomber's motel room. Pratcher
> returned home the following evening. S.P. and C.P. were at the house with
> Penwell. Penwell told Pratcher they needed to talk, and they went to the living
> room. Pratcher described Penwell as "so calm, it was scary." Report of
> Proceedings (RP) (Jan.10, 2006) at 368.

> Penwell accused Pratcher of cheating on him. Pratcher eventually
> confessed to one instance of infidelity. Penwell claimed there were more,
> knocked her down with his fist and pummeled her as she curled into a ball on the
> floor. Demanding that Pratcher identify all her lovers, Penwell began beating and
> kicking her. He hog-tied her with rope and duct tape and continued beating her
> with a fireplace poker, a fireplace shovel and a propane torch. Penwell also
> doused Pratcher with gasoline, ignited the propane torch near her, and demanded
> that she help deliver bombs to her lovers.

> While Pratcher was restrained, Penwell tied the box that had held his
> wedding ring to her chest. He told her it contained a bomb triggered by a remote
> control, which he placed between her knees, suggesting she kill herself. Pratcher
> unsuccessfully tried to push the button, wishing to die rather than be set on fire or
> beaten further. Penwell then took Pratcher outside, supposedly to deliver the
> bombs, but ultimately dragged her back into the house by her hair to resume
> beating her.

> When the fireplace shovel broke, Penwell beat Pratcher with a full-sized
> shovel, continuing to demand she confess infidelity. After Pratcher mentioned
> Bomber, Penwell placed her, still hog-tied, face down on the floor and pulled her
> pants down. Penwell repeatedly kicked her vaginal area and then "[w]ith all his
> power, and with all his strength" pushed the shovel handle into her anus "as far as
> it would go." RP (Jan. 10, 2006) at 410-11.

> When Penwell finally tired of beating Pratcher, both of her eyes were
> swollen shut. Penwell told her to clean herself and clean up the blood. She fell

down trying to wash herself in the bathroom, and Penwell kicked her in the face. Penwell then told her to lie down but not to get blood on the bed. He resisted Pratcher's pleas to take her to the hospital until he settled on the cover story that she was gang-raped and left in the driveway. He warned Pratcher that he would kill her whole family if she blamed him, and she promised to say it was not him. Penwell then drove Pratcher to Highline Hospital, with the girls in the car. Pratcher remembered nothing more from that night.

Police contacted Penwell shortly after he dropped Pratcher off. Penwell kept his hands covered until an officer asked to see them and observed that Penwell's right hand was extremely swollen, to the point that his knuckles could not be discerned. After a detective talked to the girls, police arrested Penwell despite his oral and written statements that Pratcher was already injured when she arrived at their house.

Pratcher's injuries were life-threatening. She was transported to the Harborview Trauma Center where she was resuscitated and lay in a coma for several days. Pratcher had extensive bruising and swelling all over her body, internal injuries, hypothermia, numerous fractures, scrapes and lacerations, loose teeth, a strained neck, and a traumatic brain injury. Ligature marks on her neck evidenced strangulation, and she suffered a miscarriage. A sexual assault examination showed numerous injuries to her genital area including two large lacerations on her anus and additional splits consistent with forcible insertion of a large object. One of the wounds near her vagina penetrated the skin into the muscle.

Police searched Penwell's house and found a garden shovel in the living room, the handle stained with fecal matter. Police also found a broken fireplace shovel stained with Pratcher and Penwell's blood, and pieces of rope and duct tape. There were blood spatters in the living room on the wall, the floor and the couch, on a pillow in the master bedroom, and in the bathroom, the kitchen and the dining room. Clumps of Pratcher's hair were in the kitchen, living room, and on a fireplace poker. Police also found a propane torch and a can of gasoline.

While Pratcher was recovering and Penwell was in jail, Penwell sent her letters. In them, he professed his love, apologized and asked for forgiveness, and asked Pratcher to say he did not commit the crime. He wrote that it was really Satan who was responsible, and that he had found God since going to jail.

Penwell was charged with first degree rape, first degree assault, unlawful imprisonment, felony harassment, and tampering with a witness. Initially assigned a public defender, Penwell hired attorney Anthony Savage in January, 2005. Savage had previously represented Penwell in another matter.

Trial was scheduled for September 6, 2005.  The court heard motions on the first day of trial.  Penwell did not complain of Savage's performance in open court, but later that day, filed pro se written motions appearing to request that the court appoint new counsel or grant him a continuance to retain new counsel.  The next day, the court addressed the written motions.  Penwell asked the court to stay proceedings so another attorney could review his case.  The court inquired into Penwell's dissatisfaction with Savage.  Penwell complained about Savage's preparation and planned trial strategy.  At Penwell's request, the court granted a recess for several hours so Penwell and Savage could confer.  When proceedings resumed, Savage said he and Penwell had had a "lengthy heart to heart" talk and they had agreed to ask the court for a continuance until November to try to address Penwell's concerns.  RP (Sept. 7, 2005) at 27.  The court discussed the matter with counsel and Penwell and recessed the trial.

Before trial resumed, Penwell filed another pro se motion seeking to dismiss Savage.  On November 4, the court again addressed Penwell's representation.  Penwell complained that Savage did not believe in his innocence.  Savage told the court that he and Penwell had a disagreement over tactics because Penwell wished him to take certain actions that in Savage's view would either be harmful to Penwell's defense or were contrary to rules of evidence and ethics.  The court set November 28 as the day for the trial to resume and told Penwell it would allow new counsel if the attorney was prepared to proceed then.  Penwell said he was trying to raise money for new counsel.

Penwell filed more pro se motions in November complaining about Savage.  Due to other scheduling complications, trial did not resume until December 21.  Penwell had not secured new counsel.  The court indicated that Penwell could represent himself or have Savage represent him, but could not participate in the trial as a co-counsel as was suggested by some of his motions.  Savage told the court that Penwell did not wish to go forward with his motions on that day, and trial was set over again until January 3.

When trial resumed on January 3, the court noted that Penwell had filed more pro se motions, but they did not specifically ask the court to replace Savage, and inquired into whether Penwell was still attempting to discharge Savage.  Penwell shook his head negatively, and the court then stated it would not address Penwell's other pro se motions because he was represented.  Penwell did not bring other motions or complaints regarding counsel.

At trial, Penwell testified that Pratcher had had a lover with her at the house while he was away.  He had returned home to find her injured, but did not immediately realize the extent of her injuries.  Penwell was convicted of the charged offenses with the exception of first degree rape, for which he was convicted of second degree rape as an included offense. . . .

(Dkt. No. 12, Ex. 5 at 1-6.)

REPORT AND RECOMMENDATION - 4

Petitioner appeared for sentencing on February 17, 2006.  (*See* Dkt. No. 12, Ex. 1.)  The sentencing court imposed determinate sentences of 318 months on the first degree assault charge, 29 months on the unlawful imprisonment charge, 29 months on the felony harassment charge, and 29 months on the witness tampering charge.  (*See id.*, Ex. 1 at 4 and 8.)  The court also imposed an indeterminate sentence of 280 months to life on the second degree rape charge, and ordered that the sentences on all five counts be served concurrently.  (*Id.*, Ex. 1 at 5.)

Petitioner thereafter appealed his convictions to the Washington Court of Appeals.  (*See id.*, Ex. 2.)  Petitioner's appellate counsel identified the following six assignments of error in petitioner's opening brief on direct appeal:  (1) petitioner was denied his right to counsel of his choice; (2) petitioner was denied his right to conflict free counsel; (3) improper opinion testimony denied petitioner a fair trial; (4) petitioner was denied effective assistance of counsel; (5) the court abused its discretion when it failed to consider petitioner's motions; and, (6) cumulative error deprived petitioner of a fair trial.  (*See id.*, Ex. 2 at 1-2.)

Petitioner also submitted to the Court of Appeals a *pro se* statement of additional grounds in which he identified seven more assignments of error:  (1) illegal search and seizure; (2) defective charging document/insufficient information; (3) failure to merge charges put petitioner twice in jeopardy; (4) improper opinion deprived petitioner of his right to an impartial jury; (5) prosecutorial misconduct deprived petitioner of his right to a fair trial; (6) missing and improperly admitted evidence deprived petitioner of a fair trial; and, (7) ineffective assistance of counsel deprived petitioner of a fair trial.  (*Id.*, Ex. 4 at 1.)

On October 1, 2007, the Court of Appeals issued an unpublished opinion affirming petitioner's convictions.  (Dkt. No. 12, Ex. 5.)  Petitioner thereafter filed, *pro se*, a motion to stay

procedures and a motion for reconsideration.  (*See id.*, Ex. 6.)  Those motions were denied.  (*Id.*)

Petitioner next filed, *pro se*, a petition for review in the Washington Supreme Court.  (*See id.*, Ex. 8.)  Petitioner identified the following issues for review in his petition:  (1) the trial court abused its discretion when it improperly admitted evidence without proper chain of custody; (2) petitioner was denied his right to counsel of choice; (3) petitioner was denied effective assistance of counsel; (4) failure to merge his charges put petitioner twice in jeopardy; (5) improper opinion testimony deprived petitioner of a fair trial; and, (6) cumulative error deprived petitioner of a fair trial.  (*See id.*, Ex. 8 at 1-2.)  The Supreme Court denied petitioner's petition for review without comment on December 2, 2008.  (*Id.*, Ex. 9.)  And, on February 18, 2009, the Court of Appeals issued its mandate terminating direct review.

On July 31, 2009, petitioner filed a personal restraint petition in the Washington Supreme Court.  (*Id.*, Exs. 10 and 11.)  Petitioner identified the following grounds for relief in his petition:  (1) petitioner was denied a fair trial when his defense counsel revealed to the jury that petitioner was under armed guard and had remained in jail for two and a half years while awaiting trial because he was too poor to bail out; (2) the trial court erred when it failed to instruct the jury that it had to be unanimous as to the means by which witness tampering was committed; (3) the chain of custody was broken when the state failed to have the finder of evidence testify as to the condition the evidence was in when found; (4) the court abused its discretion when it refused to hold a suppression hearing at petitioner's request; (5) the prosecution failed to disclose damaging impeachment evidence against the state's key witness; (6) the evidence was not sufficient to prove a separate act of restraint for the unlawful imprisonment charge; (7) the court abused its discretion when it ordered as a part of petitioner's sentence that he was prohibited for life from having contact with his own children; (8) the court abused its discretion and violated due process

REPORT AND RECOMMENDATION - 6

when it failed to do a same criminal conduct analysis; (9) the court abused its discretion when it ordered petitioner to pay restitution for medical costs which should have been covered by his insurance; and, (10) petitioner was denied effective assistance of appellate counsel.  (*See* Dkt. No. 12, Ex. 11.)

Petitioner's personal restraint petition was transferred to the Washington Court of Appeals for consideration.  (*See id.*, Ex. 18 at 1.)  On May 6, 2010, the Acting Chief Judge of the Court of Appeals issued an order dismissing all of petitioner's claims except petitioner's challenge to the no contact provisions of his judgment and sentence which was referred to a panel of the court.  (*Id.*, Ex. 13.)  On May 17, 2010, the Court of Appeals issued an unpublished opinion granting petitioner's personal restraint petition as to his challenge to the no contact provisions of his judgment and sentence and remanding the case to the trial court for resentencing with respect to those provisions.  (*Id.*, Ex. 14.)  On June 8, 2010, petitioner filed a motion for reconsideration of the order dismissing his personal restraint petition.  (*Id.*, Ex. 15.) That motion was denied by the Court of Appeals on June 21, 2010.  (*Id.*, Ex. 16.)

Petitioner next filed a motion for discretionary review in the Washington Supreme Court. (*See id.*, Ex. 17.)  Petitioner presented the following issues for review to the Supreme Court:  (1) petitioner was denied a fair and impartial jury trial when counsel informed the jury of petitioner's custody status; (2) the court failed to give a unanimity instruction; (3) the state failed to establish chain of custody for certain evidence; (4) the court abused its discretion in refusing to conduct a suppression hearing; (5) the state failed to disclose evidence as required under *Brady v. Maryland*, 373 U.S. 83 (1963); (6) the court failed to conduct a same criminal conduct analysis; (7) the court improperly imposed restitution; and, (8) petitioner was denied effective assistance of appellate counsel.  (Dkt. No. 12, Ex. 17 at 1-4.)

On December 8, 2010, the Supreme Court Commissioner issued a ruling denying review. (*Id.*, Ex. 18.) Petitioner thereafter moved to modify the Commissioner's ruling. (*Id.*, Ex. 19.) Petitioner's motion was denied by the Chief Justice of the Supreme Court on March 1, 2011. (*Id.*, Ex. 20.) Petitioner now seeks federal habeas review of his convictions.

<u>GROUNDS FOR RELIEF</u>

Petitioner identifies the following four grounds for relief in his federal habeas petition: (1) he was denied his right to counsel of choice; (2) he had a conflict with counsel; (3) he was denied the effective assistance of counsel; and (4) cumulative error. (*See* Dkt. No. 4 at 8.)

Petitioner's ineffective assistance of counsel claim contains multiple sub-parts. Specifically, petitioner claims that he was denied the effective assistance of counsel when counsel (1) failed to show up when he said he would; (2) failed to collect evidence to support the case; (3) failed to object to improper testimony; (4) failed to request a suppression hearing; (5) refused to allow petitioner to choose his defense; (6) failed to secure the lowest sentence possible; (7) failed to request an intoxication instruction; (8) suffered from hearing loss which kept him from hearing important things and raising proper objections; (9) told the court that motions prepared by petitioner which counsel had previously presented to the court had no merit; (10) failed to argue that petitioner's charges should be regarded as "same criminal conduct" for purposes of sentencing; (11) failed to properly represent petitioner at the restitution hearing; (12) failed to obtain credit card receipts and surveillance tape to impeach the testimony of prosecution witnesses; and, (13) failed to properly investigate the case and discover evidence that would have proved petitioner's innocence and/or created reasonable doubt. (*See id.* at 10-14.)

<u>DISCUSSION</u>

Respondent asserts in his answer to the petition that petitioner exhausted some, but not

REPORT AND RECOMMENDATION - 8

all, of his grounds for federal habeas relief.  Specifically, respondent concedes that petitioner properly exhausted his state court remedies with respect to his denial of counsel of choice claim, with respect to two sub-parts of his ineffective assistance of counsel claim, and with respect to his cumulative error claim to the extent it encompasses his denial of counsel of choice and his ineffective assistance of counsel claims.  Respondent argues, however, that petitioner failed to properly exhaust his denial of conflict-free counsel claim, a majority of the sub-parts of his ineffective assistance of counsel claim, and his cumulative error claim to the extent it encompasses the denial of conflict-free counsel claim.  Respondent further argues, with respect to the unexhausted claims, that those claims are now procedurally barred.  Finally, with respect to the properly exhausted claims, respondent argues that the state courts reasonably rejected those claims.

Exhaustion and Procedural Default

A state prisoner is required to exhaust all available state court remedies before seeking a federal writ of habeas corpus.  28 U.S.C. § 2254(b)(1).  The exhaustion requirement is a matter of comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks and citations omitted).  In order to provide the state courts with the requisite "opportunity" to consider his federal claims, a prisoner must "fairly present" his claims to each appropriate state court for review, including a state supreme court with powers of discretionary review.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing, *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

It is not enough that all the facts necessary to support a prisoner's federal claim were before the state courts or that a somewhat similar state law claim was made.  *Anderson v.*

*Harless*, 459 U.S. 4, 6 (1982). The habeas petitioner must have fairly presented to the state courts the substance of his federal habeas corpus claims. *Id.*

A review of the record confirms that petitioner has not properly exhausted his claim that he was denied conflict-free counsel. The record also reveals that petitioner failed to properly exhaust his ineffective assistance of counsel claim with respect to the following sub-parts: (1) counsel failed to show up when he said he would; (2) counsel failed to collect evidence to support the case; (3) counsel failed to object to improper testimony; (5) counsel refused to allow petitioner to choose his defense; (6) counsel failed to secure the lowest sentence possible; (8) counsel suffered from hearing loss which kept him from hearing important things and raising proper objections; (9) counsel told the court that motions prepared by petitioner which counsel had previously presented to the court had no merit; (10) counsel failed to argue that petitioner's charges should be regarded as "same criminal conduct" for purposes of sentencing; (11) counsel failed to properly represent petitioner at the restitution hearing; and, (13) counsel failed to properly investigate the case and discover evidence that would have proved petitioner's innocence and/or created reasonable doubt. Finally, the record confirms that petitioner failed to exhaust his cumulative error claim to the extent it encompasses his claim that he was denied conflict-free counsel. Petitioner's remaining claims appear to have been properly exhausted.

Respondent argues that petitioner, having failed to properly exhaust many of his grounds for relief, would now be barred from presenting his unexhausted claims to the state courts under RCW 10.73.090 (time bar), and RCW 10.73.140 (successive petition bar). RCW 10.73.090(1) provides that a petition for collateral attack on a judgment and sentence in a criminal case must be filed within one year after the judgment becomes final. Petitioner's conviction became final for purposes of state law on February 18, 2009, the date the Court of Appeals issued its mandate

REPORT AND RECOMMENDATION - 10

terminating direct review. It therefore appears clear that petitioner would now be time barred from returning to the state courts to present his unexhausted claims. *See* RCW 10.73.090. In addition, because petitioner has previously presented a personal restraint petition to the state courts, the state courts are unlikely to entertain another such petition from petitioner. *See* RCW 10.73.140.

Based upon the foregoing, this Court concludes that petitioner has procedurally defaulted on his claim that he was denied conflict-free counsel, on his claim that he was denied effective assistance of counsel with respect to the ten sub-parts set forth above, and on his cumulative error claim to the extent it encompasses his claim that he was denied conflict-free counsel. When a state prisoner defaults on his federal claims in state court, pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

## Cause and Prejudice

To satisfy the "cause" prong of the cause and prejudice standard, petitioner must show that some objective factor external to the defense prevented him from complying with the state's procedural rule. *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show "prejudice," the petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Only in an "extraordinary case" may the habeas court grant the writ without a showing of cause or prejudice

REPORT AND RECOMMENDATION - 11

to correct a "fundamental miscarriage of justice" where a constitutional violation has resulted in the conviction of a defendant who is actually innocent. *Murray*, 477 U.S. at 495-96.

Petitioner fails to establish and, in fact, fails to even argue that a factor external to the defense prevented him from complying with the state's procedural rules. Because petitioner has not met his burden of demonstrating cause for his procedural default, this Court need not determine whether there was any actual prejudice. *Cavanaugh v. Kincheloe*, 877 F.2d 1443, 1448 (9th Cir. 1989) (citing *Smith v. Murray*, 477 U.S. 527, 533 (1986)). In addition, petitioner makes no colorable showing of actual innocence. Petitioner therefore fails to demonstrate that his claim that he was denied conflict-free counsel, his claim that he was denied effective assistance of counsel with respect to the ten sub-parts set forth above, and his cumulative error claim to the extent it encompasses his claim that he was denied conflict-free counsel are eligible for federal habeas review. Accordingly, this Court recommends that petitioner's federal habeas petition be denied with respect to those claims.

<u>Standard of Review for Exhausted Claims</u>

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the

"unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *See id.* at 407-09. The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).

Clearly established federal law, for purposes of AEDPA, means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Id.* at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

## Ground One:  Denial of Counsel of Choice

Petitioner asserts in his first ground for relief that he was denied his right to counsel of choice when the trial court repeatedly denied petitioner's requests to substitute counsel. Petitioner contends that his requests to substitute were prompted by an ongoing conflict with his retained attorney, Tony Savage, and that the court refused to substitute counsel even after Mr. Savage moved to withdraw because of the conflict.  Petitioner also appears to indicate that he provided the trial court with proof that he had another attorney who was willing to take his case, but the court would only allow new counsel to appear if he could be ready to proceed right away without any time to prepare.

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  The Supreme Court has

recognized that a component of the Sixth Amendment right to counsel is the right of a defendant to secure his counsel of choice. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). However, the Supreme Court has also made clear that "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). And, in fact, the Sixth Amendment does not guarantee an accused a "meaningful attorney-client relationship." *See Morris v. Slappy*, 461 U.S. 1, 13-14 (1983).

The Supreme Court has explained that the Sixth Amendment right to counsel of one's own choosing "is circumscribed in several important respects." *Wheat*, 486 U.S. at 159. The right to counsel of choice does not extend to defendants who do not have the means to hire their own attorney. *See id.*; *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624-25 (1989). In addition, the right to counsel of choice does not entitle a defendant to be represented by an individual who is not a member of the bar, nor does it entitled a defendant to be represented by an attorney who has a conflict of interest or who declines to represent the defendant for other reasons. *See Wheat*, 486 U.S. at 159.

Moreover, a trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness . . . and against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 152 (citations omitted). The Supreme Court has explained that trial courts must be granted broad discretion on matters of continuances and that "only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay" implicates Sixth Amendment concerns. *Morris*, 461 U.S. at 11-12.

The Washington Court of Appeals denied petitioner's claim that he was denied counsel

REPORT AND RECOMMENDATION - 14

of choice on direct appeal.  The Court of Appeals explained its conclusion as follows:

Penwell first argues that the trial court abused its discretion and violated his right to counsel by failing to grant him more time to hire another attorney. One of the components of the constitutional right to counsel is a "reasonable opportunity to select and be represented by chosen counsel." State v. Roth, 75 Wn. App. 808, 824, 881 P.2d 268 (1994) (quoting Gandy v. Alabama, 569 F.2d 1318, 1323 (5th Cir. 1978)).  However, "the essential aim of the Sixth Amendment is to guarantee an effective advocate for each criminal defendant, not to ensure that a defendant will inexorably be represented by his or her counsel of choice." State v. Price, 126 Wn. App. 617, 632 (citing Wheat v. United States, 486 U.S. 1523, 159, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988)).  The right to retained counsel of choice does not have the same force as other aspects of the right to counsel; a criminal defendant has no absolute, Sixth Amendment right to a particular advocate. Roth, 75 Wn. App. at 824.

Trial courts are granted broad discretion in ruling on motions for continuances sought to obtain new counsel; only an "unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay" violates the defendant's right. Roth, 75 Wn. App. at 824 (quoting Morris v. Slappy, 461 U.S. 1, 11-12, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983)).  Generally, trial courts must balance the defendant's right to counsel of choice against the public's interest in prompt and efficient administration of justice. Roth, 75 Wn. App. at 824.  The trial court should consider whether (1) the court has granted previous continuances, (2) the defendant has a legitimate cause for dissatisfaction with counsel, and (3) available counsel is prepared for trial. Roth, 75 Wn. App. at 825.[1]  We review this determination for abuse of discretion. Roth, 75 Wn. App. at 826.

Penwell contends that the trial court erred by failing to make express findings regarding these three factors, compounded its error by improperly pressuring Penwell to decline to exercise his right to counsel of choice and incorrectly created a conflict of interest by requiring "testimony" from Savage. Appellant's Br. at 17.  We disagree.

Contrary to Penwell's contention, while the trial court did not expressly list the Roth/Price factors in ruling on Penwell's requests, the court's thoughtful consideration of those factors is plainly evident in the record.  The court granted multiple recesses to address representation issues, effectively holding proceedings off for several months during which time new counsel could have appeared.  The

---

[1]  [Court of Appeals footnote]  As noted in the appellant's brief, preexisting case law recognized a fourth factor, whether denial of the motion is likely to result in prejudice to the defendant's case, but that factor appears to have been disapproved in the United States Supreme court's recent decision in United States v. Gonzalez-Lopez, ___ U.S. ___, 126 S. Ct. 2257, 2563, 165 L. Ed. 2d 409 (2006).

REPORT AND RECOMMENDATION - 15

court also appropriately investigated Penwell's dissatisfaction with Savage and reached the justifiable conclusion that his complaints were meritless. As for the availability of new counsel, at no time did it appear another attorney was actually ready to take the case, in contrast to the facts in United States v. Gonzalez-Lopez, ___ U.S. ___, 126 S Ct. 2257, 2563, 165 L. Ed. 2d 409 (2006), cited by Penwell, in which a trial court erroneously denied an attorney request to appear *pro hac vice*.

Penwell cites excerpts from the court's comments to argue the court improperly pressured him to accept Savage as counsel, but he has not provided the relevant context. The record shows the court was addressing at least four possibilities suggested by Penwell's submissions; Savage would continue as counsel, Penwell would proceed pro se, the court would allow Penwell to proceed as co-counsel with Savage, or new private counsel might appear.

Penwell's reliance on United States v. Ellison, 798 F.2d 1102 (7th Cir. 1986) for his claim that Savage was actually conflicted is also misplaced. In Ellison, an actual conflict arose when a court-appointed attorney as forced to testify against his client at a plea withdrawal hearing in which attorney performance was in issue and the court did not appoint new counsel. These facts do not resemble Ellison. Rather, the court here did no more than appropriately explore the nature and validity of Penwell's reasons for dissatisfaction, an appropriate subject of inquiry under the circumstances. See Roth, 75 Wn. App. at 825. Inquiring of Savage and Penwell, while carefully guarding attorney-client confidentiality as the court did, was entirely proper and indeed necessary.

Finally, contrary to Penwell's characterization of the record, the proceedings on January 3 suggest that Penwell changed his position and did not wish to replace Savage. Considering the record as a whole, the court did not abuse its discretion in resolving Penwell's complaints regarding counsel.

(Dkt. No. 12, Ex. 5 at 6-9.)

The Washington Court of Appeals applied the proper standard in evaluating petitioner's claim that he was denied his counsel of choice and reasonably rejected that claim. The record reflects that petitioner first raised his concerns about his retained counsel's representation after trial had already started, albeit before a jury was selected. The trial court immediately addressed those concerns and, after some discussion with petitioner and his counsel, Anthony Savage, and after permitting petitioner and Mr. Savage some considerable amount of time to discuss the issues between themselves, granted their request to recess trial for a period of almost two

REPORT AND RECOMMENDATION - 16

months, until the beginning of November 2005, to allow them time address petitioner's concerns. (*See* Dkt. No. 12, Ex. 21.) The trial court, in granting the requested recess, confirmed with petitioner his understanding that when trial resumed he would be represented by Mr. Savage. (*See id.*) The trial court also indicated that he was granting the requested recess to accommodate petitioner, and as a courtesy to Mr. Savage, but made clear that he would not do it again. (*Id.*)

At the beginning of November, the parties again appeared before the Court to address petitioner's ongoing concerns regarding Mr. Savage's representation. (*See id.*, Ex. 22.) At that time, the court was in trial on another matter and unable to proceed until the end of the month. (*See id.*) The court advised petitioner that if he could hire another attorney and have him there and ready to go on November 28, 2005, the anticipated date on which they would be able to reconvene for trial, he would permit a substitution of counsel but, otherwise, Mr. Savage would be representing him. (*Id.*, Ex. 22 at 11-12.) The court also indicated at that time that even if Mr. Savage continued to represent petitioner, it would permit petitioner to make his own motions during trial in order to make his record. (*Id.*, Ex. 22 at 12-13.)

The parties next appeared before the court on December 21, 2005. At that time, Mr. Savage advised the court that petitioner still wanted to fire him and had asked him to file a motion to withdraw. (*Id.*, Ex. 23 at 2.) The court advised that the case would be proceeding to trial and that petitioner would have the choice of representing himself or having Mr. Savage represent him. (*Id.*, Ex. 23 at 3.) The court further advised that, after reviewing some of the motions petitioner had presented *pro se*, it was not going to allow petitioner to proceed as co-counsel as previously indicated. (Dkt. No. 12, Ex. 23 at 3.) The court then set the matter over to January 3, 2006, when trial was to begin. (*See id.*, Ex. 23 at 11-14.)

The parties appeared to begin trial on January 3, 2006. At that time, the court noted that

despite having received some additional ex parte motions from petitioner, it did not get the impression that petitioner was attempting to fire his attorney at that point. Petitioner shook his head negatively and the court proceeded to address other pre-trial matters before moving on to jury selection. (*See id.*, Ex. 24.)

The record makes clear that the Court repeatedly addressed petitioner's concerns regarding counsel and made accommodations to allow those concerns to be addressed, including recessing trial for a period of months. While petitioner apparently communicated with another attorney during that period of time, and believed he had the money to hire that attorney, no other attorney ever appeared on behalf of petitioner. Under these circumstances, it cannot be said that petitioner's Sixth Amendment right to his counsel of choice was violated. Accordingly, petitioner's federal habeas petition should be denied with respect to his denial of counsel of choice claim.

Ground Three:  Ineffective Assistance of Counsel

Petitioner asserts that he was denied the effective assistance of counsel when counsel failed to request a suppression hearing, failed to request an intoxication instruction, and failed to obtain evidence in the form of credit card receipts and store surveillance tapes that would have undermined the testimony of prosecution witnesses.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*. Under *Strickland*, a defendant must prove (1) that counsel's performance was deficient and, (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's

REPORT AND RECOMMENDATION - 18

performance fell below an objective standard of reasonableness. *Id*. at 688. Judicial scrutiny of counsel's performance must be highly deferential. *Id*. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. In order to prevail on an ineffective assistance of counsel claim, a petitioner must overcome the presumption that counsel's challenged actions might be considered sound trial strategy. *Id*.

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. In order to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. The reviewing Court need not address both components of the inquiry if an insufficient showing is made on one component. *Id*. at 697. Furthermore, if both components are to be considered, there is no prescribed order in which to address them. *Id*. at 697.

The Washington Court of Appeals denied petitioner's ineffective assistance of counsel claims on direct appeal. The Court of Appeals explained its conclusion as follows:

> Penwell raises several additional claims of ineffective assistance, but fails to make the necessary showing of deficient performance and resulting prejudice. He contends that Savage should have obtained credit card receipts or store videotapes to further impeach Pratcher, but makes no showing such receipts would have proved he was away from the house at a particular time, and offers only speculation that stores he visited would have had surveillance video cameras that could have provided additional impeachment. Similarly, he has not shown from the record that any motion to suppress would have been granted or that Savage failed to conduct necessary witness interviews. Penwell also contends Savage should have requested a voluntary intoxication instruction and argued a form of diminished capacity. But, even assuming the evidence could have supported such instructions and arguments, Savage could reasonably have considered such a

theory as dangerous, likely to be viewed by the jury as inconsistent with the primary defense of identity, which Penwell chose to present in his own testimony. Penwell's pro se claims of ineffective assistance fail.

(Dkt. No. 12, Ex. 5 at 15-16.)

The record makes clear that the Washington Court of Appeals applied the proper standard in evaluating petitioner's ineffective assistance of counsel claims and concluded that petitioner had not made the necessary showing of deficient performance or resulting prejudice. Petitioner offers no evidence or arguments in these proceedings demonstrating that this decision of the Court of Appeals was either contrary to, or constituted an unreasonable application of, clearly established federal law as determined by the Supreme Court. Accordingly, petitioner's federal habeas petition should be denied with respect to his ineffective assistance of counsel claims.

### Ground Four: Cumulative Error

Petitioner asserts in his final ground for relief that the cumulative effect of the errors alleged in his petition deprived him of a fair trial. Although no single error may warrant habeas relief, the cumulative effect of errors may deprive a petitioner of his right to a fair trial. *See Karis v. Calderon*, 283 F.3d 1117, 1132 (9th Cir. 2002). In this case, petitioner has established no constitutional error arising out of his claims. Accordingly, there is nothing to accumulate to the level of a constitutional violation. *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002)(*citing Fuller v. Roe*, 182 F.3d 699, 704 (9th Cir. 1999)). Thus, petitioner's claim of cumulative error is without merit and his federal habeas petition should therefore be denied with respect to his claim of cumulative error.

### Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA)

REPORT AND RECOMMENDATION - 20

from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to any of the claims for relief asserted in his petition for writ of habeas corpus.

CONCLUSION

For the reasons set forth above, this Court recommends that petitioner's petition for writ of habeas corpus be denied and that this action be dismissed with prejudice. This Court further recommends that a certificate of appealability be denied with respect to all claims asserted in the petition. A proposed order accompanies this Report and Recommendation.

Any objections to this Recommendation must be filed and served upon all parties no later than **May 18, 2012.** If no objections are filed, the matter will be ready for the Court's consideration on **May 25, 2012**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 27th day of April, 2012.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 21